54 F.3d 779
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 James M. PIALA, Plaintiff-Appellant,
v.
FARMERS HOME ADMINISTRATION, Defendant-Appellee,
and
Michael Bera and Helen Bera, Intervenors.
 No. 94-3151.
 United States Court of Appeals, Seventh Circuit.
 Argued April 12, 1995.
Decided May 18, 1995.
 
 Before ALDISERT,* EASTERBROOK, and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 James M. Piala and Michael Bera both applied to the Farmers Home Administration ("FmHA") for the privilege of purchasing a 242-acre farm located near Genesee Depot, Wisconsin. The County Committee, comprised of three local farmers who act as a branch of the federal agency, evaluated the applications of Piala and Bera, along with the twenty-one other applications it received, and selected Bera to purchase the farm. Piala exercised his right to seek a review of that decision by a hearing officer assigned by the FmHA National Appeals Staff. After taking testimony from Piala, Bera, and the supervisor of the County Committee, the hearing officer upheld the County Committee's decision. Piala then appealed to the FmHA State Director, who reviewed the record developed below and reversed the decision of the County Committee, awarding the right to purchase the farm to Piala. Bera took this decision to the FmHA's National Appeals Staff, which itself reviewed the record and reversed the decision of the State Director, reinstating the County Committee's selection of Bera as the purchaser of the property. Having exhausted all avenues for relief within the administrative agency, Piala filed this action in federal court pursuant to 5 U.S.C. Sec. 702. The district court refused to disturb the FmHA's final decision because it believed that the agency had followed the applicable regulations and had sufficiently considered the many arguments advanced by Piala in his federal complaint. Piala now appeals to this court, and we have jurisdiction pursuant to 5 U.S.C. Sec. 702 and 28 U.S.C. Sec. 1291. For the reasons set forth below, we affirm the district court's judgment dismissing Piala's complaint.
 
 I.
 
 2
 As the district court observed, review in federal court of decisions entrusted to administrative agencies is extremely deferential. We will set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A); see also Central States Enterprises, Inc. v. ICC, 780 F.2d 664, 673 (7th Cir. 1985). In applying this standard, we look to the administrative record already in existence, and we thus accord no deference to the district court's disposition of the matter. Hanson v. Espy, 8 F.3d 469, 472 (7th Cir. 1993). We focus primarily on whether the agency considered the relevant data and offered a satisfactory explanation for its action; we look only for a rational connection between the facts the agency found and the decision it made. Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co., 463 U.S. 29, 43 (1983); Schneider Nat'l, Inc. v. ICC, 948 F.2d 338, 343 (7th Cir. 1991); Central States, 780 F.2d at 674. We are not permitted to reweigh the evidence or to substitute our own judgment for that of the administrative agency. Jancik v. HUD, 44 F.3d 553, 556 (7th Cir. 1995).[1]
 
 
 3
 With this deferential standard of review in mind, our task in this case becomes a relatively simple one because Piala cannot contest that the FmHA considered the relevant factors under the regulations; he instead quarrels with how those factors were applied by the agency to the applications in this case. We begin, then, by briefly discussing the regulatory framework that guided the agency's decision.
 
 II.
 
 4
 When FmHA receives applications from "two or more eligible operators of not larger than family-sized farms, as of the time immediately after the contract of sale or lease is entered into," the local County Committee must make a selection between the qualified applicants. 7 C.F.R. Sec. 1955.107(e)(2).[2] The regulations direct the County Committee to look for the applicant who has "the greatest need for farm income and best meet[s] the criteria for eligibility for farm ownership loan assistance." Id. The criteria for farm ownership loan assistance include whether an applicant:
 
 
 5
 (1) [Is] a citizen of the United States ... or an alien lawfully admitted to the United States for permanent residence under the Immigration and Nationality Act....
 
 
 6
 (2) Possess[es] the legal capacity to incur the obligations of the loan.
 
 
 7
 (3) [Has] sufficient applicable educational and/or on the job training or farming experience in managing and operating a farm or ranch (within 1 of the past 5 years) which indicates the managerial ability necessary to assure reasonable prospects of success in the proposed plan of operation.
 
 
 8
 (4) [Has] the character (emphasizing credit history, past record of debt repayment, and reliability) and industry to carry out the proposed operation....
 
 
 9
 (5) Honestly [tries] to carry out the conditions and terms of the loan.
 
 
 10
 (6) [Is] unable to obtain sufficient credit elsewhere to finance actual needs at reasonable rate and terms, taking into consideration prevailing private and cooperative rates and terms in the community in or near which the applicant resides for loans for similar purposes and periods of time.
 
 
 11
 (7) [Is] the owner-operator of not larger than a family farm after the loan is closed ....
 
 
 12
 7 C.F.R. Sec. 1943.12(a). In evaluating these criteria and in assessing which applicant has the greatest need for farm income, the County Committee is to be guided by the underlying objective of FmHA's farm ownership loan program -- "to assist eligible applicants to become owner-operators of family farms, to make efficient use of land, labor and other resources, to carry on sound and successful operations on the farm and to enable farm families to have a reasonable standard of living." 7 C.F.R. Sec. 1980.180; see also 7 C.F.R. Sec. 1943.2.
 
 III.
 
 13
 It is clear to us, as it was to the district court, that the various arms of the FmHA applied the above regulations in a rational manner in the instant case. Piala and Bera were but two of twenty-three applicants for the right to purchase the 242-acre farm. Piala explained in his application that he and his wife owned an eighteen-acre nursery located less than two miles from the farm, that they had operated the nursery for twelve years, and that they were looking to purchase additional farmland to expand their existing operations. Piala expressed an intention to rent the four-bedroom house on the property to married employees of the nursery and to rent a separate portion of the property to a neighboring hunting club. Piala's financial statement showed a net worth of $695,183.35 and liabilities of $106,805.35.
 
 
 14
 Bera, meanwhile, explained in his application that he had grown up on a farm, that he had been a member of 4-H, and that he had served as Secretary of the local chapter of Future Farmers of America ("FFA"). Bera expressed a desire to own and to raise his family on a farm but indicated that he had not initially gone into farming because of the high start-up costs. He instead had procured a job as a systems analyst at a bank in Milwaukee. Bera's application detailed plans for the seventy-four acres of crop land, 152 acres of conservation area, and seven acres of homestead on the property. Bera intended to use his father's farming equipment in the beginning, but he recognized that future equipment purchases probably would be required. Bera's financial information reflected a net worth of $33,000 and liabilities of $4,000. Bera planned to use the property as his homestead and to raise his family there.
 
 
 15
 The three local farmers who comprised the County Committee reviewed the twenty-three applications and selected Bera as the purchaser of the property. The Committee advised Piala by letter that his application had not been accepted and provided three reasons: (1) the Pialas already owned a successful nursery and garden shop; (2) expansion was not necessary to provide for family living; and (3) the Pialas were not in the most need.
 
 
 16
 Piala then appealed to the National Appeals Staff, which appointed a hearing officer to conduct a hearing on Piala's administrative appeal. The hearing officer held a hearing on December 14, 1989, and testimony was offered by Piala and his wife, Bera and his fiance, and the supervisor of the County Committee. The hearing officer subsequently upheld the County Committee's decision. In his written explanation of that decision, the hearing officer rejected Piala's contention that the County Committee had misapplied the "greatest need for farm income" requirement (see 7 C.F.R. Sec. 1955.107(e)(2)) when it found that Piala was not "in the most need" because he already had a successful farming operation and did not need the property to ensure the continued success of his operation. The hearing officer explained that the County Committee's assessment of that requirement was consistent with the intent of the regulations.
 
 
 17
 Piala then appealed to the FmHA's State Director, who reversed the two earlier decisions and awarded the right to purchase the property to Piala. In a letter explaining his decision, the State Director indicated that Bera had not documented a need for farm income, nor did he satisfy the criteria in section 1943.12(a) to the extent that Piala did. The State Director emphasized in particular the fact that Bera had held a non-agricultural job for the past six years whereas Piala had twelve years of farming experience.
 
 
 18
 Bera appealed this decision to the National Appeals Staff and submitted to the Staff an updated plan for the property. After reviewing the entire record, the Staff determined that the County Committee's original decision awarding the property to Bera should stand. In its letter notifying Bera of this decision, the Staff explained that Bera was the only applicant determined to be eligible for a farm ownership loan, his was a start-up operation as opposed to an add-on farm unit, and he was most in need of farm income because Piala intended to use any income from the property only to supplement his existing family income. According to the Staff, "[t]hese arguments lend credibility to [Bera's] selection as the applicant in greatest need of farm income." (R. 30, Ex. N, at 2.) Moreover, the Staff explained its decision to Piala as follows:
 
 
 19
 Even though you did not completely meet the eligibility requirements, because you were not seeking FmHA loan assistance, you were considered among the top five applicants. As the successful owner/operator of a nursery and garden shop you wanted to expand your existing operation. Based on the fact that you were an add-on unit rather than a start-up unit, plus your income and financial holdings, the County Committee awarded the inventory farm property to another applicant who planned to operate the farm as a start-up unit. The applicant selected by the County Committee owns no land and plans to use the inventory farm as his primary residence. You own a home and 18 acres of land comprising your nursery and garden shop.
 
 
 20
 You argued that your 12 years of experience in the nursery business, plus the need to expand qualified you to receive the inventory farm over the other applicants. The FmHA regulations require the County Committee to select from eligible applicants who are most in need of farm income. You may need the property to expand an already successful business but your financial statement provides no evidence of your need for the farm income to support your family. The selectee [Bera] may have funds to purchase the land but the County Committee saw a need for FmHA financial assistan[ce] to provide operating expenses. You indicated that you are financially solvent and have no need of FmHA ownership or operating loans. You offered to pay FmHA $30,000.00 above the offered price of $92,000.00 for the inventory farm property to ensure you received the property.
 
 
 21
 (R. 30, Ex. E, at 2.) In light of this explanation for FmHA's final decision, Piala necessarily has a difficult task in attempting to show that the agency's decision was arbitrary and capricious -- i.e., that there was not a rational connection between the facts the agency found and the decision it made. See Central States, 780 F.2d at 674.
 
 
 22
 Piala nonetheless reiterates here the same argument he advanced in the various administrative appeals -- that the County Committee misinterpreted the "most in need of farm income" requirement when it focused on the fact that Piala already had a successful farming operation, whereas Bera, at the time of his application, had no farm income. We are not inclined to second-guess the agency's interpretation of the "most in need of farm income" requirement, and we certainly do not think it irrational for FmHA to favor start-up as opposed to add-on operations. Given the disparity between the net worth of Piala and that of Bera (and the fact that Piala offered to pay an additional $30,000 for the property to ensure his selection), it was hardly irrational for the agency to conclude that Bera in fact had the greater need for farm income.[3] It similarly was not irrational for the agency to conclude that Bera was more likely than Piala to require FmHA assistance in the future. Finally, although Bera had been working as a systems analyst for the past six years, the County Committee found that he had submitted the best plan for the property. Based upon the quality of Bera's plan and the fact that Bera had been raised on a farm and been active in 4-H and FFA, the County Committee found Bera sufficiently experienced to assure a reasonable prospect of success in implementing his farm plan. FmHA certainly considered the fact that Piala had more recent farming experience than Bera, but that fact alone would not entitle Piala to the property. FmHA provided a rational explanation for selecting Bera despite his lack of recent farming experience, and we therefore have no grounds for disturbing its considered judgment.
 
 
 23
 The district court's judgment dismissing Piala's complaint is
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Hon. Ruggero J. Aldisert, of the Third Circuit, sitting by designation
 
 
 [1]
 Piala contends that we not only must review FmHA's decision under the arbitrary and capricious standard set out in section 706(2)(A) but that we also must determine whether FmHA's decision was supported by "substantial evidence" under section 706(2)(E). This standard applies, according to Piala, because we are reviewing the case "on the record of an agency hearing provided by statute." 5 U.S.C. Sec. 706(2)(E). FmHA responds that the substantial evidence standard has no application here because the relevant statutes do not require FmHA to conduct an "on the record" hearing in these cases. We need not resolve this dispute, however, as even Piala concedes that the distinction between the two standards is largely semantic. We explained in Central States, for example, that "an [agency] action that is not 'arbitrary, capricious, an abuse of discretion or not in accord with law' must necessarily be supported by the evidence in the record." 780 F.2d at 674 n.10; see also Illinois v. United States, 666 F.2d 1066, 1072 n.6 (7th Cir. 1981). Yet even assuming that the substantial evidence standard is more stringent than the arbitrary and capricious standard (see, e.g., Aman v. FAA, 856 F.2d 946, 950 n.3 (7th Cir. 1988)), we are convinced that the agency's decision here finds more than ample support in the record evidence
 
 
 [2]
 We cite throughout to the version of the regulations in effect in 1989, when the County Committee selected Bera to purchase the property
 
 
 [3]
 Although Piala contends that the agency relied on data that overstated both his income and net worth during the relevant time period, our review of the record leaves us with little doubt that the lower figures proposed by Piala would have affected the agency's assessment of who had the greater need for farm income